```
           IN THE UNITED STATES DISTRICT COURT
         FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

GREGORY STYERS,                  :
      Plaintiff
                               :

      vs.                        :   CIVIL NO. 1:CV-05-2127

                               :
COMMONWEALTH OF PENNSYLVANIA,
et al.,                          :
      Defendants


*M E M O R A N D U M*

*I.   Background*

      We are considering Defendant David Guido's post-trial motion for judgment as a matter of law and for a reduction of the jury's damages award.  (doc. 62).  Plaintiff Gregory Styers, a trooper with the Pennsylvania State Police ("PSP"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging that Guido and other PSP employees retaliated against him for exercising his First Amendment rights.  Styers alleged that Defendants did so in response to his successful pursuit of a grievance concerning a transfer within the PSP.

      On August 8, 2007, a jury found Guido liable for retaliating against Styers for exercising his First Amendment rights.  (doc. 53).[1]  On August 28, 2007, we entered judgment against Guido and in favor of Styers reflecting the jury's

---

[1] During trial, we granted a motion for judgment as a matter of law as to Defendants James Garofalo and Richard Zenk.  *See* doc. 51. Additionally, the jury determined that Defendant Bret Waggoner did not engage in retaliatory conduct against Styers.  *See* doc. 53.

verdict and its award of $0 in compensatory damages--which was converted to $1.00 in nominal damages--and $20,000.00 in punitive damages. (doc. 58). Guido has filed a motion for judgment as a matter of law and for reduction of the punitive damages award. (doc. 62). Styers filed a brief in opposition (doc. 74), and Guido did not file a brief in reply. Upon review of the motion and the record, we will deny Guido's motion.

*II.   Judgment as a Matter of Law*

In his motion for judgment as a matter of law, Guido argues that Styers failed to show his personal involvement in the retaliatory conduct. (doc. 73, p. 4). We will grant judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 "only if, viewing the evidence in the light most favorable to the nonmovant and giving [the nonmovant] the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). Motions for judgment as a matter of law are granted sparingly, and we will sustain a verdict if the record contains the "minimum quantum of evidence from which a jury might reasonably afford relief." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691 (3d Cir. 1993), *abrogation on other grounds recognized by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392 (3d Cir. 2003).

Section 1983 claims require personal involvement by the defendant in the alleged wrongs. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). Personal involvement may take the form of direct participation. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Alternatively, a defendant may be personally involved through "allegations of personal direction or of actual knowledge and acquiescence." *Id*. Guido argues that the evidence does not show his personal involvement in any of the retaliatory acts supporting the verdict. The alleged retaliatory conduct that we instructed the jury to consider included the following: (1) Styers' allegation that Guido, as his supervisor, made it more difficult for him to qualify as a pilot-in-command of a PSP helicopter when he returned to the unit following his successful grievance, and (2) Styers' allegation that Guido authorized him to attend a court hearing in uniform only to later file a complaint which led to his discipline.

The evidence supports the jury's conclusions as to Guido's involvement in both instances of retaliatory conduct. With respect to Styers' qualification as a pilot, even though Guido did not set Styers' hourly certification requirement upon his return to the aviation unit, Guido did not have a plan in place to help Styers qualify and he did not assign Styers a "check pilot" so that he could complete the in-flight certification requirement. Notes from Trial ("NT"), 68-70. The

jury, by crediting Styers' testimony, could conclude that Guido was personally involved in this retaliatory conduct.

As to the disciplinary action for attending the court hearing, Styers testified that he notified Guido of his scheduled court hearings and specifically asked Guido if he could wear his uniform on the day in question. NT, 70-75. After receiving authorization to attend the hearing in uniform, Styers testified that Guido observed him dress in a PSP uniform, went to the hearing, and, upon return, filed an internal affairs complaint. *Id*. Styers was disciplined as a result of the complaint. *Id*. at 103. Again, a jury, crediting Styers' testimony, could determine that Guido was personally involved in this retaliatory conduct. Accordingly, the record contains more than the minimum quantum of evidence of Guido's personal involvement to sustain the jury's verdict.

*III. Reduction of the Punitive Damages Award*

Guido also argues that the $20,000.00 punitive damages award is unconstitutionally excessive and unreasonable based upon the facts of the case. (doc. 73, p. 8). We will uphold the punitive damages award.

*A. Constitutionality of the Damages Award*

The Constitution provides due process protection from a "grossly excessive" punitive damage award because such an award "furthers no legitimate purpose and constitutes an

arbitrary deprivation of property." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416-17, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003).  In evaluating the reasonableness of a punitive damages award, courts consider three guideposts: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *Id*. at 418 (citing *BMW of N. Am. v. Gore*, 517 U.S. 559, 574-75, 116 S. Ct. 1589, 134 L.Ed.2d 809 (1996)).

The degree of reprehensibility of the defendant's misconduct is the first and "most important indicium of the reasonableness of a punitive damages award." *Id*. at 419.  We evaluate the reprehensibility of a defendant's misconduct by considering whether

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery or deceit or mere accident.

*Id*.  Guido argues that the evidence does not support a finding of a high degree of reprehensibility because the harm suffered by Styers was economic, not physical, and Guido's conduct did

not evince indifference or reckless disregard for Styers' safety. (doc. 73, pp. 10-11).

Some of the factors listed above are present here. Styers, while not financially vulnerable, was a vulnerable target because Guido, as his immediate supervisor in charge of assigning his flights, had control over Styers' ability to qualify as a Pilot-in-Command of the PSP helicopter. NT, 58-59, 60, 65-70. Second, there were multiple instances of retaliatory conduct. By failing to assign Styers a check pilot to complete his qualification requirements, Guido impeded Styers' ability to qualify to pilot the PSP helicopter over the course of four months. *Id.* at 69-70. Additionally, the jury determined that Guido retaliated against Styers by filing an internal affairs report for Styers wearing his PSP uniform to a court hearing despite giving him prior authorization to do so. NT, 70-75. Third, in authorizing Styers to wear a uniform that he later reported as a violation, the disciplinary incident showed "trickery" and deceit. Finally, the jury's verdict established that Guido's retaliatory conduct was wanton or malicious. Therefore, we find that there is sufficient evidence of reprehensibility to uphold the jury's punitive damages award.

Under the second guidepost, we look at the ratio of actual harm to the punitive damage award. *Campbell*, 538 U.S. at 418. In evaluating the reasonableness of the damages ratio, there is no strict mathematical formula for us to apply, nor is

6

there a bright-line ratio which a punitive damages award may not exceed. *Id*. at 425. While the Supreme Court has stated that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," *id*., the Court has recognized that "[a] higher ratio may also be justified in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Gore*, 517 U.S. at 582.

We also note that a damages ratio may be less useful when the jury award consists of nominal and punitive damages. *See Sherman v. Kasotakis*, 314 F. Supp. 2d 843, 871 (N.D. Iowa 2004) (collecting circuit court cases and explaining that some courts have found the ratio comparison "ineffective" when the jury award includes nominal and punitive damages). Such damage awards may occur with greater frequency in civil rights claims where "it is difficult to assess a monetary value to the harm suffered, thus resulting in only the imposition of nominal damages, but where punitive damages are warranted." *Id*. at 874-75. In this circuit, a district court has observed:

> A mathematical comparison of punitive damage awards to the nominal damage awards in civil rights cases where the plaintiff has not shown . . . cognizable compensatory damages will inevitably produce ratios well in excess of 500 to 1, since a punitive award of $500 will constitute the minimum amount necessary to deter future unlawful conduct.

*Tate v. Dragovich*, No. Civ. A 96-4495, 2003 WL 21978141, at *9 (E.D. Pa. Aug. 14, 2003).

Styers' First Amendment retaliation claim presents the type of civil rights violation discussed in *Sherman* and *Tate.* While we are mindful of the 20,000:1 damages ratio, we agree that, given the nature of Styers' claim and the jury award, the ratio may not be as useful in determining the reasonableness of the jury's award.  Indeed, "[b]ecause actions seeking vindication of constitutional rights are more likely to result only in nominal damages, strict proportionality would defeat the ability to award punitive damages at all." *Sherman*, 314 F. Supp. 2d at 875 (quoting *Williams v. Kaufman County*, 352 F.3d 994, 1016 (5th Cir. 2003)).  Additionally, we note that the "constitutional calculus" in evaluating a punitive damages award is informed by a general concern for reasonableness, not simply the ratio of the damages in the jury's award.  *Gore*, 517 U.S. at 583.  Given our reluctance to emphasize the damage ratio in a case with a jury award of both nominal and punitive damages, we conclude that the second guidepost does not support a finding that the damages are constitutionally excessive.

Similarly, we find that the third guidepost, an examination of the punitive damages award in light of comparable civil penalties, is not helpful in our analysis.  Guido, who concedes that "[t]here are no comparable civil penalties for redress of First Amendment violations" and that some courts have found this guidepost of limited utility, nevertheless suggests that Pennsylvania's Whistleblower Law, 43 P.S. § 1421, *et seq.*

8

should guide us as to the appropriate sanctions for retaliation. (doc. 73, p. 13).  As noted by Styers, Pennsylvania's Whistleblower Law protects Commonwealth employees from retaliation for reporting government waste and wrongdoing. (doc. 74, p. 9).  Guido, however, retaliated against Styers for his successful use of the grievance process concerning a transfer within the PSP.  Additionally, even if we looked to the Whistleblower Law as a comparable civil penalty, the Third Circuit has hesitated to overturn a punitive damages award on this basis alone due to the difficulty in measuring civil penalties against punitive damages.  *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 237-38 (3d Cir. 2005). Therefore, we are unable to defer to a legislature's determination as to appropriate sanctions, and we find that this guidepost does not support a finding that the damages are constitutionally excessive.

We conclude that despite the high damages ratio, the jury's verdict is not constitutionally excessive.  The jury determined that Styers suffered retaliation for exercising his First Amendment rights by utilizing his employer's grievance process.  The record supports the jury's finding that Guido, as Styers' immediate supervisor, retaliated against Styers over the course of several months and on more than one occasion. In doing so, the jury also determined that Guido acted wantonly or maliciously.  The second and third guideposts do not alter our

analysis as to the reasonableness of the damages award.  As a result, we conclude that the punitive damages award is not so grossly excessive as to violate Guido's due process rights.

   *B.  Remittitur of the Damages Award*

Guido also argues that the jury's verdict requires a remittitur because it "is unreasonable in light of the nature of [Guido's] conduct, the lack of harms to others, and [Styers'] lack of any economic or psychological harm."  (doc. 73, p. 14). In the event that the Court grants a remittitur, Guido argues that Styers should have an opportunity to accept a reduced award, or the Court should order a new trial because the liability and punitive damages issues are inextricably intertwined.  *Id*. at 16.  We find that the jury's verdict does not warrant a remittitur.

A remittitur is appropriate if a court determines that a jury's decision "is clearly unsupported and/or excessive." *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986).  A court may not reduce a jury's award simply because it would have awarded a lesser amount had it served as the fact-finder.  *Gumbs v. Pueblo Int'l, Inc.*, 823 F.2d 768, 771 (3d Cir. 1987).  Instead, to disturb the jury's verdict, "the damages assessed by the jury must be so unreasonable as to offend the conscience of the Court."  *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1230 (3d Cir. 1989)

(quoting *Murray v. Fairbanks Morse*, 610 F.2d 149, 152 (3d Cir. 1979)).

     The jury's award, consisting of nominal damages and $20,000.00 in punitive damages, does not require a remittitur. First, we find that there is support in the record for the jury's award.  As discussed *supra*, the evidence supported Guido's personal involvement in retaliatory conduct that impeded Styers' ability to qualify to pilot a helicopter within his PSP unit as well as conduct that resulted in disciplinary action against Styers.  Second, while we may have awarded a lesser amount had we served as the fact-finder, the amount of punitive damages, in light of its purpose to punish conduct and deter its repetition, is not so excessive as to shock the conscience of this Court.  Accordingly, we will deny Styers' motion for a remittitur of the jury's award.

                                    <u>/s/William W. Caldwell</u>
                                    William W. Caldwell
                                    United States District Judge

Date: February 29, 2008

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


GREGORY STYERS,                 :
        Plaintiff
                                :

        vs.                     :   CIVIL NO. 1:CV-05-2127

                                :
COMMONWEALTH OF PENNSYLVANIA,
et al.,                         :
        Defendants
```

*O R D E R*

AND NOW, this 29th day of February, 2008, upon consideration of Defendant's Motion for Judgment as a Matter of Law and for Reduction of the Punitive Damages Award (doc. 62), filed September 12, 2007, it is ordered that:

1. The motion is denied;

2. The parties are directed to resume briefing Styers' motion for attorney's fees;

3. Defendant Guido shall respond to Styers' motion for attorney's fees within twenty (20) days of the date of this Order;

4. Styers may file a reply brief pursuant to Local Rule 7.32.

/s/William W. Caldwell
William W. Caldwell
United States District Judge